two as I'm calling it. Um, you have five minutes, Miss Patrick. Thank you, Your Honor. Alice Patrick back again as appointed pro bono counsel for plaintiff appellant Dante Mitchell. Aziz, you know, this case concerns Mitchell's second complaint, which was dismissed by the district court before any defendant appeared in the action. Taking the allegations in that the especially because Mr Mitchell was proceeding pro se. The complaint raises numerous colorable claims and should have been permitted to proceed to discovery. Most straightforwardly, it alleges First Amendment violations that are practically indistinguishable from the facts in Shakur versus Selsky, which this court held to make out colorable claims. In addition, Mitchell adequately and plausibly alleged procedural due process claims. In specific, he alleged that he was subjected to months of solitary confinement for possessing harmless U. F. D. Materials without being permitted to present evidence and witnesses in support of his defense. I'm happy to answer any questions this court may have about this brief. Otherwise, I will rest on the brief. How do you address the potential argument that the days that he spent in solitary confinement 61 98 fall below the 101 days that are articulated in the in the hammer versus Richard's case? Yes, Your Honor. The Palmer case, like other cases from this court, make clear that there's no bright line rule for a specific duration of time that push something within or without a protective liberty interest under the Sandan analysis. And even in that case, this court said that a dismissal without any factual development, which is what happened here, would only be appropriate for periods that the court described as again in Palmer was identified as less than 30 days. So the periods of time here both double and triple that. In addition, in Palmer, the court observed that even periods of less than 101 days, fewer than 101 days, could be an atypical punishment if there was evidence in the record that that type of punishment for that duration was not typically imposed. And Mitchell has plausibly alleged that New York State was in the process of phasing out solitary confinement for infractions of this type at the time that he suffered them. So again, that would be sufficient under Palmer. So go ahead, please. Well, the operative complaint that was dismissed in the here, it was the amended complaint, but it was such a, it was a, it was really a wholesale amendment. There were additions, including sort of meaningful substantive additions. When we're thinking about leave to amend, should we really be treating, I'll call the operative complaint, the first amended complaint as, as a first pass for a self-represented party in terms of what kind of leave we should be giving to amend? I would say yes, Your Honor, because Mitchell was proceeding pro se, and I believe he was trying to create some judicial efficiency by bringing claims he had not been able to bring in Mitchell 1 into this second action. So this was his first opportunity to plead those claims. Certainly he could have started a third case, but I don't think he should be penalized for trying to consolidate his actions, especially in light of the difficulty that incarcerated plaintiffs often have in, you know, initiating a case, getting through the inform of operas process and so forth. In addition, it should be noted that these claims do relate to the first complaint that was filed in this action, which concerned the conditions of confinement while he was subject to solitary confinement in one of the UFD related punishments. And why would it be an abuse of discretion not to permit the transferring of portions of this action to the Southern District, given the location of the purported incidents at Fishkill? There are a few reasons, Your Honor. First of all, the district court transferred both the Fishkill defendants and defendant Jaypay, and Mitchell expressly alleged that some of Jaypay's misconduct occurred in the Southern District. So it would be factually inaccurate. In addition, the district court made a legal error, which is always an abuse of discretion, insofar as it failed to consider the convenience of the parties, which is statutorily required under 28 UFC 1404A. And that's one of the bases that the district court relied on for the transfer. Well, the district court did articulate that it would require different witnesses, documentary proof for the Fishkill claims. So it appears that the district court did go through some of the factors related to transfer. The district court did not consider, however, the importance of Mitchell's choice of venue, which is something that's due considerable weight. The district court did not consider Mitchell's communion as a pro se party who had just recently been released from prison and faced significant barriers to litigation. And of course, the district court didn't consider any of the preferences of the defendants because they were not yet in the case. In addition, it's not clear that the transfer furthered judicial efficiency in any way because we now have a third docket where Mr. Mitchell, you know, is struggling to litigate a third case. So respectfully, I think it's clear that under the factors of the district court was required to consider that there was an abusive discretion here. All right. Thank you, Counsel. Thank you. And thank you for your pro bono appearance.